IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTELLISYSTEM, LLC ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 19-1359 |
| WILLIAM B. MCHENRY, JR. : | |

## MEMORANDUM

**SURRICK, J.**                                                              **JUNE 26, 2019**

Petitioners Intellisystem, LLC, John W. Lee, and Andrew B. Sacks filed a Petition to Confirm the Arbitration Award from an American Arbitration Association ("AAA") proceeding involving the parties. (ECF No. 1.) Respondent has not filed a response to the Petition. Presently before the Court is Petitioners' Motion for Default Judgment. (ECF No. 3.) For the following reasons, Petitioners' Motion will be treated as an unopposed Motion for Summary Judgment and will be granted.

### I. BACKGROUND

Respondent William McHenry, Jr. is the principal of Ascension Medical Supply, LLC. (Pet. ¶ 11, ECF No. 1.) On April 26, 2016, Respondent, on behalf of Ascension, signed an Exclusive Distributorship Agreement ("EDA") with Petitioner Intellisystem, LLC. (*Id.* ¶¶ 10-12; EDA, Mot. for Dflt. App. 6, ECF No. 3.) Pursuant to the EDA, Ascension agreed to pay $100,000 to Intellisystem in return for the exclusive right to distribute an Intellisystem product called the OsteoFX (HM Cast). (EDA preamble, art. 1.1.) In addition, the EDA required Ascension to make minimum purchases of the Osteo FX (HM Cast) "in a number agreed upon by the parties consistent with the initial demand of product." (EDA art. 5.1.) Ascension did not make these minimum purchases. (Pet. ¶ 13.) The EDA also included an integration clause,

stating that the EDA "constitutes the entire understanding of [the parties] with respect to the subject matter hereof," (EDA art. 17.2) and an arbitration clause compelling the parties to submit to arbitration for any disputes arising out of the EDA (*Id.* art. 16).

On September 15, 2016, Respondent filed a complaint against Petitioners in the United States District Court for the Southern District of Mississippi. McHenry Compl., *McHenry v. IS, LLC*, No. 16-728 (S.D. Miss., filed on Sep. 15, 2016). Respondent claimed that Petitioners had fraudulently induced McHenry and Ascension into entering into the EDA by "represent[ing] . . . that the OsteoFX casting system was the only product of its kind worldwide," when in fact there are "no less than three Orthopedic supply houses in the United States [that] acquire this very type of cast from a Chinese manufacturer." McHenry Compl. ¶¶ 7, 10. Due to the presence of the arbitration provision in the EDA, the judge entered an order compelling arbitration in that case. (Order Compelling Arb., Mot. for Dflt. App. 30.) The court also found that Ascension is not an existing limited liability company and that Respondent is an alter ego of Ascension. (*Id.* at 5.)

On May 4, 2018, Respondent filed a Notice of Claim against Petitioners with the American Arbitration Association ("AAA") alleging the same harm as it alleged in its Mississippi federal case. (Notice of Claim, Mot. for Dflt. App. 39.) Arbitration proceeded in Philadelphia, Pennsylvania, and Petitioners eventually filed a motion for dispositive relief pursuant to AAA's Commercial Arbitration Rule 33. (Mot. for Dflt. App. 63.) Respondent filed a brief in opposition to the motion for dispositive relief and the parties appeared for oral argument on the matter. (Pet. ¶ 24.) On September 20, 2018, the arbitrator granted Petitioners' motion for dispositive relief. (J. Klein Order re: Rule 33 Mot., Mot. for Dflt. App. 93.) The arbitrator found that, when an agreement contains an integration clause, the parol evidence rule applies, and prohibits parties from asserting that they were fraudulently induced into signing the

agreement. (*Id.* at 2 (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004); *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa. 2007)).)

On January 11, 2019, Petitioners moved for a final arbitration award of attorneys' fees and costs pursuant to AAA Rule 47, which allows such an award if both parties request it. AAA Comm. R. 47(c), 47(d)(ii). Respondent did not file a response to this motion, nor did he appear at the subsequent hearing on the motion. (Pet. ¶ 28.) On February 5, 2019, the arbitrator awarded Petitioners $77,713.13 in attorneys' fees and costs. (Award, Mot. for Dflt. App. 97; *see also* Reasoned Op., Mot. for Dflt. App. 100 (supporting amount awarded).) Respondent did not respond to the award, did not file an appeal, and has not made any payment. (Pet. ¶¶ 32-33.)

On April 1, 2019, Petitioners filed this Petition to Confirm the Arbitration Award and Enter Judgment Against Respondent. On May 1, 2019, the United States Marshals Service personally served Respondent with the Petition. (ECF No. 2.) Respondent did not file a Response. On May 23, 2019, Petitioners filed the instant Motion for Default Judgment. After reviewing the Motion, an Order was entered requiring Petitioners to submit evidence supporting the amount of the arbitrator's award, which consisted of attorneys' fees and costs. (ECF No. 4.) On June 5, 2019, Petitioners provided the Court with documentation supporting the amount of the award, including affidavits from the attorneys, time logs, and receipts. (Decl., ECF No. 5.) On June 10, 2019, Petitioners submitted a letter to the Court correcting the amount requested. (Supp. Decl., ECF No. 6.)

## II. LEGAL STANDARD

As an initial matter, "[d]efault judgments are generally inappropriate in proceedings to confirm an arbitration award." *Doctor's Assocs., Inc. v. Singh-Loodu*, No. 13-3030, 2014 U.S. Dist. LEXIS 52542, at *1 (D.N.J. Apr. 16, 2014) (quoting *Trs. of New York City Dist. Council of*

3

*Carpenters Pension Fund v. Premium Sys., Inc.*, No. 12-1749, 2012 U.S. Dist. LEXIS 117506, at *7 (S.D.N.Y. Aug. 20, 2012)).[1] Since a petition to confirm contains a record from the underlying arbitration proceeding, courts should treat an unanswered petition to confirm as an unopposed motion for summary judgment. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006); *see also N.J. Bldg. Laborers Statewide Benefit Funds v. Innovative Masonry*, No. 14-3112, 2015 U.S. Dist. LEXIS 105291, at *2-4 (D.N.J. Aug. 3, 2015) (assessing merits of unopposed petition to confirm arbitration award); *Int'l Union of Operating Eng'rs Local 825 Emple. Benefit Funds & Trs. v. Altura Concrete Inc.*, No. 14-5743, 2015 U.S. Dist. LEXIS 100013, at *2-4 (D.N.J. July 30, 2015) (same).

However, the standard of review is fairly strict. "[W]here the party has agreed to arbitrate, . . . the court will set [the arbitrator's] decision aside only in very unusual circumstances." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (citations omitted). Sections 10 and 11 of the Federal Arbitration Act ("FAA") list the few situations in which a district court may vacate or modify an arbitrator's award. The court may vacate an award:

1. where the award was procured by corruption, fraud, or undue means;

2. where there was evident partiality or corruption in the arbitrators, or either of them;

3. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4. where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[1] There is a dearth of precedent in the Third Circuit on the issue of unanswered petitions to confirm.

4

9 U.S.C. § 10. The court may modify an award:

1. [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]

2. [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; or]

3. [w]here the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. Only if the arbitrator's decision shows a "manifest disregard" for the law will the court vacate an arbitrator's decision. *First Options of Chi.*, 514 U.S. at 942 (citing *Wilko v. Swan*, 346 U.S. 427, 436 (1953)). A court need only find the decision to be "colorable" to justify the award. *Quaker Sec., Inc. v. Mid-Atlantic Sec., Inc.*, No. 96-0151, 1996 U.S. Dist. LEXIS 13475, *9 (E.D. Pa. Sept. 6, 1996), *aff'd mem.*, 116 F.3d 469 (1997). Therefore, an arbitrator's award will be enforced unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) (citation omitted).

## III. DISCUSSION

Petitioners request that this Court: (1) confirm the arbitration award; (2) enter judgment in favor of Petitioners in the amount of the award; (3) award costs incurred in the filing of this Petition, pursuant to Federal Rule of Civil Procedure 54; and (4) order Respondent to pay post-judgment interest on the amount of the judgment pursuant to 28 U.S.C. § 1961.

### A. Confirmation of Arbitrator's Decision

The arbitrator's decision is supported by the evidence and the law. The dispute between the parties centers on whether Petitioners fraudulently induced Respondent to enter into the EDA

5

by making representations that the OsteoFX casting system was unique. The EDA itself does not make any such statements, but does include an integration clause stating that the agreement constitutes the entire agreement between the parties. The arbitrator found that Pennsylvania law precludes Respondent from asserting that he was fraudulently induced into signing the EDA. More specifically, the arbitrator concluded that "parol evidence is inadmissible to show fraud in the inducement" when the subject agreement contains an integration clause. (J. Klein Order re Rule 33 Mot. 2.) To support that conclusion, the arbitrator cited two Pennsylvania Supreme Court decisions.

The first case the arbitrator cited was *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004). In *Yocca*, a class of persons who purchased seats in a football stadium sued the football franchise for fraud and breach of contract, among other things. *Id.* at 432. The seats assigned to each purchaser matched a diagram of the stadium included in the agreement for the purchase of the seats, but was different from a diagram that the purchasers had been given before signing the agreements. The agreements contained an integration clause. The court in *Yocca* held that, because the agreement for the purchase of the seats constituted the entire agreement between the parties, "the parol evidence rule bars the admission of any evidence of previous oral or written negotiations or agreements entered into between the parties concerning the sale of the [seats], such as the [original stadium diagram], to explain or vary those terms expressed in the . . . Agreement." *Id.* at 438.[2] The court also clarified that, "while parol evidence may be

---

[2] The court defined the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the

6

introduced based on a party's claim that there was a fraud in the execution of the contract, . . . parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract." *Id.* at 437 n.26 (citations omitted).

The second case that the arbitrator cited was *Toy v. Metropolitan Life Insurance Company*, 928 A.2d 186 (Pa. 2007). The plaintiff in *Toy* was an insured who sued the seller of her life insurance policy for a number of claims based on misrepresentation. *Id.* at 190. The policy had been marketed as a combination life insurance and savings plan, but the contract that the plaintiff ultimately signed stated only that it was a life insurance plan. *Id.* at 189-90. The court in *Toy* compared the case to *Yocca* and held that the parol evidence rule did not bar consideration of the salesperson's misrepresentations about the plan because the plaintiff's claims were ultimately about fraud in the execution rather than fraud in the inducement—i.e., the plaintiff was not fraudulently induced into signing the agreement, but was "mistaken as to the terms and the actual contents of the agreement [s]he executed due to the other's fraud." *Id.* at 206.

*Yocca* and *Toy* support the arbitrator's decision in this case. The arbitrator found that, unlike the plaintiff's claims in *Toy*, Respondent's claims centered on fraudulent inducement rather than fraud in the execution. (J. Klein Order re: Rule 33 Mot. 2.) He then found that the case was analogous to *Yocca*, such that the parol evidence rule would operate to bar consideration of representations that the OsteoFX product was unique. (*Id.* at 2-3.) The arbitrator also noted that Respondent failed to point out any Pennsylvania appellate court cases

---

    agreement between the parties, and its terms and agreements cannot be added to
    nor subtracted from by parol evidence.

*Id.* at 436 (quoting *Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924)).

that hold otherwise. (*Id.* at 3.) We are satisfied that the arbitrator's decision is more than "colorable." *Quaker Sec., Inc*, 1996 U.S. Dist. LEXIS 13475, at *9. Therefore, we will confirm the arbitrator's decision.

## B. Confirmation of the Arbitration Award

The arbitration award consists of: (1) attorney's fees for Robert Parrott, Esq., in defending Petitioners in the Mississippi federal case filed in the Southern District of Mississippi, in the amount of $8,470.63; (2) attorney's fees of Jeremy Abay, Esq., and his firm, Sacks Weston Diamond, LLC, for proceeding with the arbitration, in the amount of $57,840.00; and (3) administrative and arbitrator's fees from the AAA, in the amount of $11,402.50. (Award 2.)

AAA Commercial Rule 47 provides that the arbitrator may award expenses and fees "as the arbitrator deems is appropriate" and may award attorney's fees "if all parties have requested such an award or it is authorized by law or their arbitration agreement." Once an adjudicator determines that attorney's fees may be awarded, the prevailing party must demonstrate that the rate they are requesting is the community market rate. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. . . . [A] reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." (citations omitted)). The prevailing party may satisfy that burden by stating their qualifications and billing rate, as well as submitting an affidavit of the attorney stating that they have "personal knowledge of the hourly rates customarily charged in the relevant market" and that their requested rate is reasonable. *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 628 (E.D. Pa. 1998) (citing *Washington v. Phila. Cty. Ct. Com. Pl.*, 89 F.3d 1031, 1036 (3d Cir. 1996)). If the non-prevailing party does not offer any opposition to the prevailing party's evidence, "the requested rate is the community market rate at

8

which the petitioning attorney may be compensated." *Id.* (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).

In this case, it appears that both Petitioners and Respondent requested an award of attorneys' fees from the arbitrator. (Reasoned Op. 2.) The arbitrator also noted that equity favored an award of attorneys' fees because Respondent's underlying claims were dismissed, he did not present any arguments or evidence to support his "bald allegations" of a competing product, he did not demonstrate that Petitioners knew about a competing product if there was one, and he failed to dispute Petitioners' arguments regarding the award or even appear for argument. *Id.* We are satisfied that these facts support an award of attorneys' fees and costs pursuant to AAA Rule 47 and the principles of equity.

Regarding the precise amount of fees and costs that Petitioners request, we are satisfied with the arbitrator's finding that the fees are reasonable. Attorney Parrott submitted an affidavit stating that he has been licensed to practice law since 2011, and that he is licensed in both Mississippi and Louisiana. (Parrott Aff. ¶ 2, Decl. Ex. 1.) His hourly rate on this matter ranged between $280 and $290, and he spent a total of 29.8 hours defending Petitioners in the Southern District of Mississippi. (*Id.* ¶ 5.) He also included a time log detailing how he spent each of those hours and stated that "[t]hese hourly rates are reasonable for attorneys practicing in the . . . Southern District of Mississippi based on my experience and knowledge of the rates charged in the locality for similar matters." (*Id.*) He stated that the total amount of attorney's fees is $8,418.00 and costs totaled $52.63.

Attorney Abay also submitted an affidavit stating that he has been practicing law since 2013 and is admitted in Pennsylvania, New Jersey, the Eastern District of Pennsylvania, the District of New Jersey, and the Third Circuit Court of Appeals. (Abay Aff. ¶ 2, Decl. Ex. 2.) He

9

also stated that his billing rate is $500.00 per hour and that he spent 115.68 hours on the arbitration proceeding in this matter. (*Id.* ¶¶ 3, 6.) He attached a detailed ledger of how he spent these hours and noted that more than 60% of his time was spent on the dispositive motion that resolved the arbitration. (*Id.* ¶ 5.) He also stated that his rate "is reasonable for attorneys who handle complex commercial litigation in Philadelphia," and that the rate was recently incorporated into two settlements, one of which was approved by the United Stated District Court for the District of New Jersey, the United States Attorney General's Office for the District of New Jersey, and the New Jersey Attorney General. (*Id.* ¶¶ 5, 6.) His fees total $57,840.00. (*Id.* ¶ 3.)

Finally, the AAA charged the parties for various administrative and arbitration fees. (AAA Invoice, Decl. Ex. 3.) The invoice included filing fees of $1,725.00, as well as arbitrator's fees of $6,715.00. (*Id.*) Petitioners paid the entirety of these fees, including Respondent's portion of the arbitration fee because Respondent failed to pay. (*Id.*; Abay Aff. ¶ 5.)[3]

Given the experience and knowledge of Attorneys Parrott and Abay, as well as their sworn statements that their rates are reasonable, and the fact that Respondent has not presented any evidence to the contrary, we are satisfied that the requested attorneys' fees are reasonable. The requested costs, detailed in receipts and invoices attached to Petitioners' Declaration, are also reasonable. We will therefore confirm the arbitrator's award, as corrected by Attorney Abay.

---

[3] The arbitrator's award stated that the administrative and arbitration fees total $11,402.50. (Award 2.) However, the AAA invoice states the total amount due as $8,440.00 (AAA Invoice), and counsel for Petitioners has clarified that $8,440.00 is the correct amount paid (Supp. Decl.).

10

## C. Costs Associated with This Petition

Petitioners request costs associated with the filing of this Petition. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Petitioners have submitted receipts for the cost of filing this Petition and serving it upon Respondent, $600 in total. (Mot. for Dflt. App. 106, 107.) These costs are reasonable and will be awarded.

## D. Post-Judgment Interest

Petitioners request post-judgment interest on the amount of the judgment pursuant to 28 U.S.C. § 1961(a). That statute states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The interest rate is required to be equal to "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* Petitioners shall be entitled to receive interest at that rate on the amount of the judgment rendered on the date of the Order accompanying this Memorandum.

## IV. CONCLUSION

For the foregoing reasons, Petitioners' unopposed Motion for Summary Judgment will be granted. An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.

11